UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARLOS RIVERA SANTIAGO, et al.,

        Plaintiff,

v.                                                   Case no. 8:07-CV-1786-T-27MAP

WM. G ROE & SONS, INC.,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiffs, indigent migrant agricultural workers from Mexico who were hired by Defendant Wm. G. Roe & Sons, Inc. to work during the 2006-07 citrus season, filed a complaint raising four claims: (1) a FLSA claim for declaratory relief and damages for violations of the minimum wage; (2) a class action for damages for violations of the minimum wage provisions of the Florida Constitution; (3) a class action claim for breach of contract; and (4) an individual breach of contract claim by Plaintiff Rivera Santiago. This Court, however, dismissed counts II, III, and IV of the Plaintiffs' complaint, finding that the state law claims substantially predominated over the Plaintiffs' FLSA claims. *See* Order, doc. 17. With regard to the sole remaining claim, a claim for declaratory relief and damages concerning alleged FLSA violations for "under reporting" and untimely and improper reimbursement for certain pre-employment expenses, the Court approved the parties' joint settlement concerning the claims stemming from under-reporting of hours, and entered a partial summary judgment in Plaintiffs' favor concerning some of the pre-employment expenses. In lieu of proceeding to trial on the remaining pre-employment reimbursement claims, the Plaintiff sought dismissal and the Court granted the parties' joint motion to dismiss and entered a final judgment.

*See* amended complaint, doc. 27; Order on summary judgment, doc. 49; Order granting motion to approve settlement, doc. 50; Order granting motion to dismiss, doc. 54; Order of Final Judgment, doc. 57. At issue now is the appropriate fees and costs to be awarded under 29 U.S.C. §216(b). After consideration, I recommend the Plaintiff's motion for fees and costs be granted in part to that extent that Plaintiff be awarded $14,382.50 in fees and $13,149.54 in costs.[1]

   A.  Discussion

The FLSA provides that "the court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs , allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate. This "lodestar" may then be adjusted for the results obtained. *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292-1303 (11th Cir. 1988). The party who applies for attorney's fees is responsible for submitting satisfactory evidence to establish both that the requested rate is in accordance with the prevailing market rate and that the hours are reasonable. *Duckworth, supra,* 97 F.3d at 1396; *Norman, supra,* 83 F.3d at 1303. With respect to rates, an applicant may meet this burden by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. *Norman, supra,* 836 F.3d at 1299. In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Id.* at 1303. With respect to hours, if an applicant's documentation "is inadequate, the district court may reduce the award accordingly."

---

[1] The district judge referred this matter to me for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 6.01(b). *See* doc. 71.

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). A first step in the computation of the lodestar is determining the reasonable hourly rate. The Defendant does not challenge the rates for Plaintiff's counsel Alejandro T. Reyes, at $200.00, and Gregory S. Schell, at $300.00. Because my assessment shows the Plaintiffs' counsels' rates are reasonable for this litigation, I will move to the next step in the lodestar analysis– determining what hours were reasonably expended on the litigation.

The determination of reasonableness lies in the sound discretion of the trial court, and in calculating, the court should exclude excessive, unnecessary, and redundant hours, and also time spent litigating discrete and unsuccessful claims. *Hensley, supra,* 461 U.S. at 434; *Norman, supra,* 836 F.2d at 1301; *Duckworth, supra*, 97 F.3d at 1397. "The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Hensley, supra*, 461 U.S. at 435. Fee applicants are required to exercise "billing judgment" and exclude these hours from their fee application. *ACLU of Ga. v. Barnes*, 168 F.3d 423 (11th Cir. 1999). "If the fee applications do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are 'excessive, redundant, or otherwise unnecessary." *Id.*

Here, Plaintiffs' counsel seeks $29,765.00 in attorneys' fees, representing 144.75 hours for attorney Reyes, and 6.05 hours at an hourly rate of $300.00 for attorney Schell. Plaintiffs submit that the attorneys' work for count I was "for the most part inseparable from their work on the others." Plaintiffs do not seek to adjust the lodestar amount either upward or downward, but assert that this Court should consider the *Johnson* factors articulated below.

The Defendant's primary objection is an award of attorneys fees to Plaintiff under the unique

3

facts of this case would penalize Defendant who had taken measures to ensure compliance with the applicable wage laws, including compliance with the preemployment reimbursement requirements. Prior to the 2006-07 harvest season, Defendant retained the services of Alfredo Gomez to assist in locating experienced fruit harvesters to come to Florida to harvest fruit. According to Defendant, the contract Defendant entered into with Gomez required Gomez to recruit and transport the guest workers to Florida, and to reimburse the workers for their preemployment expenses. In fact, Gomez provided to Defendant documents signed by each worker attesting to the fact that the Defendant "has already paid the cost generated for payments of visa, applications, transportation and meals." In short, Defendant took affirmative steps to ensure that Plaintiffs were paid their preemployment expenses at the outset of the harvest season and was misinformed that they were properly and timely paid these expenses. Defendant alleges that when it came to its attention that some of the Plaintiffs were claiming they had not been reimbursed for certain amounts, it confronted Gomez and Gomez reported that all expenses were paid and provided documentation to prove it. *See* doc. 70, at pp. 4-5. Defendant now claims that the reason for the failure to properly and timely reimburse these expenses is the apparent breach of contract by Gomez.[2] *See* doc. 70, p. 6.

Defendant also asserts that Plaintiff "seeks to now lump fees and litigation expenses for dismissed class action state law claims (dismissed by Judge Whittemore), discussions with non-parties, as well as under-reporting of hours claims (settled by the parties with an agreed component for fees and costs) into this Motion, when the only claims upon which Plaintiffs partially prevailed pertained to whether Defendant properly had reimbursed the Plaintiffs at the end of their respective

---

[2] While this Court recognizes the Defendant's good intentions, this argument is not relevant to the determination of the award of attorney's fees as the district judge already awarded judgment to the Plaintiffs with regard to the preemployment expense claims.

4

initial weeks of employment (or pre-paid their pre-employment relocation expenses) as required by the *Arriaga* decision." Doc. 70, p.7. This circuit's law requires that objections from fee opponents concerning hours be specific and "reasonably precise." *American Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999). Generalized statements that the time spent was unreasonable or unnecessary are not particularly persuasive. *Norman*, *supra,* at 1301. Hence, a fee opponent's failure to explain exactly which hours he views as unnecessary or duplicative is generally viewed as fatal. *Wales v. Jack Berry Inc.,* 192 F.Supp. 2d 1313, (M.D.Fla. 2001) citing *Gray v. Lockheed Aeronautical Systems, Co.,* 125 F.3d 1387 (11th Cir. 1997). Therefore, the hours that Defendants did not raise specific objections to will be accepted.

Defendant's objects to seventeen of the Plaintiff's billing entries. Three of these objections purport that Plaintiffs seek reimbursement for fees incurred for trial preparation when Plaintiffs eventually elected to forego trial and take a dismissal. However, upon review, I find that the pretrial preparation work, done on June 22-24, 2009, was done prior to this Court's Order granting partial summary judgment in favor of Plaintiff entered on July 2, 2009 (doc. 49), and this Court's adoption of the parties' settlement agreement on July 8, 2009 (doc. 50). Thus, this category of objections will be rejected. Two of Defendant's objections concern that a "client" is not identified and similarly that a particular named client is "not a Plaintiff." These objections are also rejected.

The remaining objections state that the entries are "overbroad." Plaintiff already removed some of the objectionable hours from its bill: March 26, 2008, March 31, 2008, and April 22, 2008. *See* doc. 69, n.2. Defendant's objection to the April 3, 2008 entry, "drafting affidavits affidavits [sic] for Paulo Serrano and Jorge Luis Mendez; checking supporting facts and updating hours worked" is rejected, since this entry seems to include work done for claims aside from the class certification

5

claims. Defendant also objects to time spent on September 24, 2007, "preliminary draft of federal complaint" (4.10) and on September 25, 2007, "finalize draft of complaint" (2.00), and time spent on June 18, July 26, 27, 28, and August 20, 2008, meeting with or interviewing clients. For these particular entries, I agree with Plaintiffs that the work done for the non-FLSA claims and the settled claims is inseparable from the work done for the claims on which Plaintiff prevailed.

Although the "lodestar" method effectively replaced the *Johnson* balancing test previously employed in the Eleventh Circuit, courts still consider the twelve factors leftover from the balancing test in determining the lodestar amount. *See James v. Wash Depot Holdings, Inc.,* 489 F.Supp2d 1341 (S.D. Fla. 2007) citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[3] The *Johnson* factors are: time and labor required, the novelty and difficulty of the questions, the skill requisite to perform the legal service properly, the preclusion of other employment by the attorney due to acceptance of the case, the customary fee, whether the fee is fixed or contingent, time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation, and ability of the attorney, the undesirability of the case, the nature and length of the professional relationship with the client, and awards in similar cases. *Johnson*, 488 F.2d at 717-719.

The most important factor to consider is the result obtained. *Hensley*, 461 U.S. at 436. The lodestar must be reduced to reflect when a plaintiff's success or victory are limited. *Norman*, 836 F.2d at 1302, *Popham v. City of Kennesaw*, 820 F.2d 1570, 1579-80 (11th Cir. 1987). Fee awards, however, should not simply be proportionate to the results obtained by a plaintiff. Instead, "given

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions the former Fifth Circuit rendered prior to October 1, 1981.

the nature of claims under the FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of judgment in the case." *Tyler v. Westway Auto. Serv. Cntr., Inc.*, 133 Fed. Appx. 604 (S.D. Fla. 2005). Even though the claims raised in this action are straightforward, it is necessary to recognize the important public function in protecting the rights of migrant workers and to maintain the availability of litigation to prevent abuse by employers. The transient nature of migrant workers, their lack of resources, and their limited English-speaking skills increases the time and effort needed to maintain contact and gather information and makes legal representation challenging. *See Gooden v. Blanding,* 686 F.Supp. 896 (S.D. Fla. 1988).

While the public benefit derived from a plaintiff's recovery in a FLSA claim should be taken into consideration in calculating an attorney's fee, the most critical factor in determining a reasonable attorney's fee is the degree of success obtained. *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1306 (11th Cir. 2001); *Hensley, supra,* at 436. Plaintiffs maintain they obtained an "excellent result." The docket sheet, however, reflects that after the Court entered an amended judgment in favor of Plaintiffs for $11,518.00 and approved the parties' settlement agreement for $18,000 (plus $2,000 to the Plaintiffs' attorneys), the Plaintiffs voluntarily dismissed their remaining FLSA claims prior to trial.[4] *See* docs. 48, 56-57. Apparently, the claims dismissed involved the Defendant's failure to reimburse workers for a $300.00 hiring fee/ bond payment. *See* Order granting dismissal, doc. 54. Hence, in reality, the Plaintiffs only obtained a partially favorable result. Of course, in determining the amount of attorneys' fees to be awarded pursuant to the FLSA fee-shifting provision,

---

[4] The settlement agreement indicates that "the proposed settlement pays the Plaintiffs for the alleged under-reported hours under the FLSA ... even if the Plaintiffs had prevailed at trial, which was by no means certain, their recovery of actual damages would not have been greater than the settlement amount." *See* doc. 48, p. 6.

I will consider only the Plaintiffs' degree of success on the FLSA claims. *Andrews v. United States,* 122 F.3d 1367 (11th Cir. 1997) (even if plaintiffs had succeeded on their medical monitoring claims under the rubric of the FTCA, that success could not count for the purpose of calculating an EAJA fee award because the EAJA does not permit recovery of fees and costs expended on tort claims); *Wales, supra,* 192 F.Supp. 2d at 1327 ("… just as I will not consider the two unsuccessful AWPA claims in determining the [FLSA] attorneys' fee award, I also will not consider the successful AWPA claim"). In *Wales,* the court explained:

> Unfortunately, the principles for determining the amount of reduction in the lodestar have not been articulated with any specificity. Thus, while appellate courts have regularly considered percentage reductions in the lodestar, no case has been cited, or found, which sets forth guidelines for deciding the amount of the percentage that should be employed. The parties seem to agree that a rule of proportionality between a recovery and an attorneys' fee award is inappropriate. (citation omitted) Beyond that, however, the plaintiffs simply say that there should be no reduction and the defendants at the hearing merely urged the court to "lop off" some amount.

*Id.* at 1327-28. As in *Wales*, Plaintiffs here suggest that the lodestar amount need not be adjusted upward or downward and the Defendant simply states the Court has discretion to adjust the lodestar. Hence, as in *Wales*, in deciding upon an appropriate percentage of reduction, I will consider the twelve factors set forth in *Johnson, supra*. I have already discussed the time and labor required, the novelty and difficulty of the questions, the undesirability of the case, the amount involved, and the results obtained. Especially in light of the fact that the Defendant does not object to the attorney's hourly rates, as in *Wales*, some of the factors– the skill requisite to perform the legal service properly, the preclusion of other employment by the attorney due to acceptance of the case, the customary fee, whether the fee is fixed or contingent, time limitations imposed by the client or the circumstances, the experience, reputation, and ability of the attorney, the nature and length of the

professional relationship with the client– are not helpful in calculating the lodestar. Particular attention must be given to the factor of awards in similar cases. In *Wales*, the court discussed various FLSA cases applying lodestar reductions when the plaintiffs obtained limited success, and decided to award thirty-three percent of the lodestar amount, a sixty-seven percent reduction in the lodestar. In *Wales,* however, the plaintiffs sought an attorneys' fee award of more than $1,000,000 for a recovery of about $21,000, and the court found that the plaintiffs failed to prove their central theme that the defendants were motivated by an intent to cheat the workers and failed to establish their fundamental contention that the estimated workday should be a minimum of eleven hours. *Id*. at 1326-27. Here, although the Plaintiffs did not obtain perfect success, they prevailed on the bulk of their FLSA claims. Taking together the Plaintiffs' counsel's failure to adequately segregate time spent on successful and unsuccessful claims, and the limited success the Plaintiffs achieved, I find that the lodestar should be reduced by 50% in this case. *See James v. Wash Depot Holdings, Inc.,* 489 F.Supp. 2d 1341, 1353 (S.D. Fla . 2007) (reducing lodestar by 50% in part due to the fact that the plaintiff's counsel failed to adequately segregate time spent on successful and unsuccessful claims). For these reasons, I recommend the Plaintiffs be awarded an attorneys' fee in the amount of $14,382.50. This figure represents 50% of the total fee sought ($30,765/2) and subtracting $1,000 because the settlement agreement already awarded Plaintiff's attorney's $1,000.

  *B. Costs*

  Via its Bill to Tax Costs filed on September 3, 2009 (doc. 58), and its Amended Motion for Attorneys Fees (doc. 69) Plaintiffs seek at total of $31,365.10 in costs and expenses. The Defendant

9

timely objected to the bill of costs as untimely and containing no back-up documentation.[5] Moreover, by its responses to these motions, Defendant raised specific objections as follows:

|  | REQUEST | OBJECTION |
|---|---|---|
| Filing fee | $ 350.00 | No objection |
| Fees for copies | $ 30.10 | No objection[6] |
| Travel costs for depositions | $ 1,720.40 | objects to $1,720.40[7] |
| Mediation | $ 701.25 | objects to $701.25 |
| Jury trial preparation | $ 225.00 | objects to $225.00 |
| Videographer fees | $ 9,857.15 | objects to $9,857.16[8] |

---

[5] This district requires that a prevailing party file a verified bill of costs with the Clerk (such a form is available on this district's website). The bill of costs form states "SPECIAL NOTE: Attach to your bill an itemization and documentation for requested costs in all categories."

[6] Plaintiffs originally sought $380.10 for "copying charges for payroll documents secured through discovery request," but then conceded in their memorandum in opposition to Defendant's motion to disallow Plaintiffs' Bill of Costs (doc. 65) that only 86 of the pages were related to the Plaintiffs' first week or work and seeks only $30.10 for the copying of payroll documents instead.

[7] Plaintiffs seek reimbursement for Allen Norton and Blue, P.A. for "travel costs for depositions taking place in Guadalajara, MX" on August 14, 2008. Defendant objects because the Plaintiffs were "located within the geographical confines of the Middle District of Florida while working temporarily for Defendant, and they elected not to institute this lawsuit until after they completed their employment and removed themselves from Florida and returned to Mexico.

[8] Plaintiffs itemized this request, listing seven entries for Hutchings Court Reports, LLC for "videotaped depositions" and for each entry providing the names of the deponents, the dates of the videotaped depositions, and the city where the video depositions were taken. Defendant maintains that although the depositions were noticed by Plaintiffs' counsel, the case involved individual FLSA claims by two Plaintiffs, and that the Plaintiffs later sought leave of court to amend their Complaint to add individual FLSA claims of 36 additional workers. At the time the depositions took place on July 28, 2008, this Court issued an order dismissing the Plaintiffs' state

| | | |
|---|---|---|
| Videographer travel/ fees | $1,435.81 | objects to $1,435.81[9] |
| Format conversion of video | $ 1,567.50 | objects to $1,567.50[10] |
| Interpreter | $ 5,184.46 | objects to $5,184.46[11] |
| Court reporter fees | $10,619.43 | objects to travel/ subsistence costs[12] |

---

court claims. Although the Defendant concedes that this Court has discretion to award videographer expenses for depositions noticed as being recorded by videotape when the defendant does not interpose an objection at the time of the notice, the Defendant objects to reimbursement of the videographer fees because the Plaintiff have not demonstrated that the deposition transcripts were necessarily obtained for use in the case or shown that both videotape and stenographic recordings were necessary.

[9] Plaintiffs seek reimbursement for Hutchings Court Reporters, LLC for "videographer travel/fees for depositions spanning July 28-30, 2008, Guadalajara. MX". Defendant objects to reimbursement because the "videotapes were unnecessary when Plaintiffs dismissed their claims to avoid trial, and such videotapes were not ever used to obtain the partial summary judgment."

[10] Plaintiffs seek reimbursement for Hutchings Court Reporters, LLC for "format conversion from hi-definition mini-tapes to DVD MPEG format, conversion needed to edit video depositions for use at jury trial." Defendant objects to reimbursement because the "videotapes were unnecessary when Plaintiffs dismissed their claims to avoid trial, and such videotapes were not ever used to obtain the partial summary judgment."

[11] Defendant concedes in its motion to disallow the Plaintiffs' Bill of Costs (doc. 60) that §1920 permits recovery for "compensation of interpreters" but not for interpreter salaries and expenses. Although Plaintiffs' motion seeks recovery for lump sums for "translation at depositions ... includes travel and other compensation," and is not accompanied by any invoices or other documentation reflecting the amounts attributable to each item, Plaintiffs' Amended Application for an Award of Attorneys Fees (doc. 69, n.5) states that travel expenses for interpreter Dyalma L. Ocasio fall under 29 U.S.C. §216(b) and total $2,584.45, while interpretation services fall under 28 U.S.C. §1920, and total $2,600.01." See doc.69, n. 5, 6.

[12] Plaintiffs itemized their requests in this category, listing the appearance fees for Southwest Florida Reporting Services, Inc. on three different dates (two including transcription costs) costing $60.00, $1,273.65, and $444.90, a $1,041.69 cost for Hutchings Court Reporters, LLC for "certified shorthand reporter services for depositions taken in Guadalajara, MX on July 28-30, 2008" and listing twenty-seven more entries for Hutchings Courts Reporters, LLC for various deposition transcripts ranging from $137.00 to $743.43 each. For each entry the Plaintiffs listed the individual deposed, the date of the deposition, and the city where the deposition was taken. The Defendant concedes that court reporter fees are taxable, but objects to

| | | |
|---|---|---|
| Witness Fees | $ 594.00 | objects to $594.00[13] |
| TOTAL | $32,285.10[14] | objects to $21,325.57 |

In light of the Defendant's objections and because the Plaintiffs failed to provide documentation for their requests for costs and expenses, I find reductions appropriate as follows:

| | |
|---|---|
| Filing fee | $ 350.00 |
| Fees for copies | $ 30.10 |
| Travel costs for depositions | $ 0 |
| Mediation | $ 0 |
| Jury trial preparation | $ 0 |
| Videographer fees | $ 0 |
| Videographer travel/ fees | $ 0 |
| Format conversion of video | $ 0 |

---

travel/ subsistence costs.

[13] Plaintiff itemized their requests in this category, listing the names of twenty-seven witnesses who were deposed, and the date of each person's deposition. For each person Plaintiffs request a $22.00 witness fee. At the time of the depositions, only two of the persons deposed were Plaintiffs in this action. Of course, Defendant objects to reimbursement of the witness fees for these two individuals. Defendants also object to the witness fees for the remaining persons because these persons later became named Plaintiffs in this case.

[14] This amount differs from the total amount sought in the bill of costs ($31,635.10) because it does not yet reflect the $1,000 in costs already received by the Plaintiffs as part of the settlement, and because the bill of costs sought $380.10 for copying costs. Since the filing of the bill of costs, the Plaintiffs agreed to reduce the copying costs to 86 copies at a rate of $ .35 per copy for a total of $30.10. *See* doc. 65, pp. 4-5.

| | |
|---|---|
| Interpreter | $ 2,600.01[15] |
| Court reporter fees | $10,619.43[16] |
| Witness Fees | $ 550.00[17] |
| TOTAL | $ 14,149.54 |

Because the Plaintiff's attorneys were already awarded costs in the amount of $1,000 as part of the settlement agreement, this amount should be reduced by $1,000, making the total costs $13,149.54. It is hereby

RECOMMENDED:

1. Plaintiffs' Amended Application for Award of Attorney's Fees (doc. 69) be GRANTED to the extent that Plaintiff be awarded $14,382.50 in attorneys' fees and taxed $13,149.54 in costs.

IT IS SO REPORTED at Tampa, Florida on February 4, 2010.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained

---

[15] *See* n. 10, *supra*.

[16] Although the Defendant objects to reimbursement of any travel/ subsistence costs, I find that the Plaintiffs motion adequately itemizes and describes the court reporter fees and includes only reimbursable services. *See* doc. 58, pp. 4-5

[17] At the time the depositions were taken, all but two of the depositions were of non-parties and are taxable.

in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).